IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMATEKOU KOKOUVI AMEFIA, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. CIV-26-975-R |
| DR. SCARLET GRANT,[1] et al., | ) ) ) | |
| Respondents. | ) ) | |

## REPORT AND RECOMMENDATION

Petitioner Tamatekou Kokouvi Amefia, a noncitizen proceeding pro se,[2]

seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States

District Judge David L. Russell referred the case to the undersigned

---

[1]     Respondent Chris Gantt is the Warden of the Cimarron Correctional Facility and is not a federal official and the Government's response is not filed on his behalf. Doc. 8, at 1 n.1; https://www.corecivic.com/facilities/cimarron-facility (last visited July 22, 2026).

[2]     This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). Because Petitioner is proceeding pro se, the Court liberally construes his arguments. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

[3]     Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 8, and the time for Petitioner to reply has lapsed, *see* Doc. 6. So, the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release.

## I.    Factual background and procedural history.

Petitioner is a citizen of Togo who entered the United States at an unknown location on or about April 19, 2021. Doc. 8, at 4 (citing Ex. 1). On June 7, 2021, the Department of Homeland Security (DHS) placed him in removal proceedings through the issuance of a Notice to Appear (NTA), charging him as removable under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).[4] Doc. 8, Ex. 1. On July 9, 2021, DHS released him under a $1,500.00 bond. Doc. 8, Ex. 2. Petitioner later filed

---

[4]    These statutory provisions are codified in the United States Code at 8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I). Section 1182(a)(6)(A)(i) provides that a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i). Section 1182(a)(7)(A)(i)(I) provides that any noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I).

an Application for Asylum and Withholding of Removal, which remains pending. Doc. 8, Ex. 3.

On March 21, 2026, Lawton Police Department officers arrested Petitioner for driving under the influence and for an improper turn. Doc. 8, Ex. 4, at 1-3. On March 25, 2026, he was transferred to Immigration & Customs Enforcement (ICE) custody and is currently detained at the Cimarron Correctional Facility. Doc. 8, at 4 (citing Ex. 5). Petitioner maintains that he followed every requirement of his conditions of release as he awaited his asylum decision. Doc. 1, at 6.

## II.   Petitioner's claims.

Petitioner raises four grounds for relief:

(1)   Illegal arrest and detention without a warrant in violation of his procedural and substantive due process rights;

(2)   Illegal arrest and detention in violation of the INA and Administrative Procedure Act (APA);

(3)   Illegal arrest and detention without prior notice and a meaningful opportunity to respond in violation of the Fifth Amendment's Due Process Clause (procedural due process); and

(4)   Detention without a bond hearing in violation of the Fifth Amendment's Due Process Clause.

*Id.* at 6-7.

Petitioner seeks a grant of the writ of habeas corpus; his immediate release on an appropriate order of supervision (OOS) or, in the alternative, a prompt bond hearing before a neutral decisionmaker where the Government bears the burden of proving he is a flight risk or danger by clear and convincing evidence; a preliminary and permanent injunction against any future illegal detention; an injunction against moving Petitioner from this district without giving 72-hours' notice; a shortened objection time; a show cause order as to why his petition should not be granted within three days; and an expedited decision.[5] *Id.* at 7.

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

---

[5]    The Court addressed these last four requests in its Order for Response, Doc. 6.

## IV.    Discussion.

### A.    Section 1226 governs Petitioner's detention.

Respondents maintain that § 1225(b) applies to Petitioner's detention and that Petitioner is an applicant for admission. Doc. 8, at 6-8.[6] But Respondents are incorrect. Petitioner effected entry into the country over five years ago, so he is not subject to § 1225(b)(2)(A)'s mandatory detention requirement. *Quiroz v. Mullin*, No. 26-6019, --- F.4th ----, 2026 WL 1876709, at *5 (10th Cir. June 30, 2026) (holding "that noncitizens who entered the United States and . . . thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)"); *see also Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk

---

[6]    Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").[7]

*Quiroz* involved a noncitizen who had never been seen by an Immigration Judge (IJ). 2026 WL 1876709, at *1-2. Here, Petitioner received an initial bond hearing and the IJ necessarily determined he was neither a flight risk nor a danger to the community. *See* Doc. 8, Ex. 2; 8 C.F.R. § 241.4(e) (criteria for discretionary release under 8 U.S.C. § 1226(a) includes determining that the noncitizen "is not likely to pose a threat to the community following release," and "does not pose a significant risk of flight if released"). And the IJ released Petitioner subject to a $1,500.00 bond. *Id.*

The precise nature of the alleged Due Process violation here differs slightly from that in *Quiroz*. Given Petitioner was previously granted bond, a decision predicated on a finding that he posed neither a danger to the public

---

[7]    Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.S.C. § 1225(b)(2)(A))).

nor a flight risk, he asserts that Respondents' violation of his procedural Due Process rights stems from his re-detention without notice, a pre-deprivation hearing, or any material change in circumstances. Doc. 1, at 6; *Otero v. Kaiser*, 2025 WL 3301056, at *8 (N.D. Cal. Nov. 26, 2025) (Because the government originally released Petitioner pursuant to 1226(a), he is "protected by the Due Process Rights created by § 1226(a).").

### B. Petitioner was denied due process.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use

when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"Just as people on preparole, parole, and probation status have a liberty interest, so too does [Petitioner] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar,* 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019) (first citing *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972) (parolee), and then citing *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973) (probation)); *see Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding

8

"that noncitizens acquire a liberty interest once released from immigration detention"); *cf. Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) ("When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey,* 408 U.S. at 482 ). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his liberty interest when ICE detained him and placed him into custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending five years in the United States before his present detention. By initially releasing Petitioner subject to bond, the Government necessarily determined that was "not likely to pose a threat to the community follow release" and did not "not pose a significant risk of flight if released." 8 C.F.R. § 241.4(e). Respondents have presented no evidence that there was a change in this

assessment. *Dos Santos v. Noem,* 2025 WL 2370988, at \*9 (D. Mass. Aug. 14, 2025) (noting Board of Immigration Appeals (BIA) "has held . . . that 'where a previous bond determination has been made by an [IJ], no change should be made by a District Director absent a change of circumstance.'" (quoting *Matter of Sugay,* 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). By permitting Petitioner to remain at liberty for five years following the issuance of his NTA, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Apart from his arrest and the state charges, Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in continued liberty grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The

10

risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was detained without notice or a hearing. And "[b]y releasing Petitioner into the interior, the government has already concluded that he does not present a flight or security risk." *Castaneda v. Bondi,* 2026 WL 911416, at *13 (W.D. Tex. Mar. 23, 2026).

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews,* 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted,* 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release and bond were justified. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews,* 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without any determination whether he posed a risk of flight or danger is low. *Saqib,* 2026

11

WL 350830, at *6. And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). This is especially true given that Petitioner's detention was not deemed necessary for five years.

### C.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

12

The undersigned finds Petitioner's unlawful detention and the ongoing violation of Petitioner's due process rights require his immediate release subject to the same conditions of his earlier release.[8] Numerous courts across the country have ordered immediate released in similar circumstances.[9]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate**

---

[8]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[9]    *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

**release.**[10] **The undersigned also recommends the Court order the Government to certify compliance with the Court's order by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of the Court's order to counsel for the Warden of the Cimarron Correctional Facility. The Court should order that Respondents may not re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[11]

---

[10]    Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2022, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

[11]    The undersigned finds it is not necessary to reach Petitioner's remaining claims for relief under the APA and for warrantless arrest.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 27, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[12] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 22nd day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[12]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").